IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Vernon Samuel Brown, #303575,   ) | CIVIL ACTION NO. 9:11-0019-RBH-BM |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.   ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Correctional Officer Deangelo Ford and   ) | |
| Lieutenant Richard Hodge,   ) | |
| ) | |
| Defendants.   ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights by the named Defendants.

The Defendant Ford filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on July 25, 2011. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on July 28, 2011, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendant's motion may be granted. The Defendant Hodge thereafter filed his own motion for summary judgment on August 5, 2011, following which a second Roseboro order was entered by the Court on August 9, 2011. Plaintiff filed a memorandum in opposition to the Defendants' motions on August 30, 2011, as well as his own motion for summary judgment, to which the Defendants filed a memorandum in opposition on September 13, 2011.



These motions are now before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in his verified Complaint[2] that on June 1, 2010 he was walking to the commissary to receive "some boxers". Plaintiff alleges that as he approached the canteen door, the Defendant Ford (a correctional officer) asked him where he was going, and Plaintiff responded that he was going to the commissary to pick up some boxers. Plaintiff alleges that Ford told him to go back to his dorm, to which Plaintiff responded by reaching into his back pocket to show Ford that he had a pass to go to the Commissary. Plaintiff alleges that at that time Ford grabbed him and threw him against the wall, including throwing his face against the wall several times that caused injury. Plaintiff alleges that he was treated by "Nurse Godwill" and received "three pain pills and an ice pack for my injury." Plaintiff seeks money damages against the Defendants. See generally, Verified Complaint.[3]

In his motion for summary judgment (filed in response to the Defendants' motions for

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. All parties have filed motions for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

[3] Plaintiff is a frequent filer of litigation in this Court; Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970)[a federal court may take judicial notice of the contents of its own records]; and this is the second lawsuit Plaintiff has filed regarding the conduct of Officer Ford on June 1, 2010. In his other lawsuit, Brown v. Ford, Civil Action No. 9:11-360, Plaintiff alleges that Ford used excessive force against him on June 1, 2010 when he was in his cell. A Report and Recommendation for summary judgment in favor of Ford has been entered in that case, and is awaiting disposition by the Court.



summary judgment) Plaintiff argues that he has stated a valid claim for excessive use of force in his Complaint, and has attached two documents to support his claim: a "Declaration" from Bryon Hornes, and a "Declaration" from Jimi D. Parker.[4]  Hornes states in his declaration that he is an inmate with the South Carolina Department of Corrections, and that on June 1, 2010 he was standing in the commissary when he heard Officer Ford ask Plaintiff for his pass.  Hornes attests that when Plaintiff "went in his back pocket for the pass I saw Defendant Officer Ford grab[ ] the Plaintiff and [throw] him into the brick wall[ ] several time[s].  Hornes further attests that he also "saw when Defendant threw the Plaintiff's face against wall several time[s]". Hornes Declaration.  Parker attests in his declaration that he is also an inmate with the South Carolina Department of Corrections, and that when Plaintiff "came to the holding cell" he heard Plaintiff tell the Defendant Lieutenant Hodge about the incident between him and Ford, but that Hodge told Plaintiff there was nothing he could do about the incident.  Parker further attests that he heard Hodge tell the Plaintiff that Ford "should beat your ass worse than he did your gay ass." Parker Declaration.

In support of his motion for summary judgment, the Defendant Ford has submitted an affidavit wherein he attests that he is a correctional officer at the Ridgeland Correctional Institution, where Plaintiff is housed, and that on June 1, 2010 he was on duty as yard officer and supervising the inmate controlled movement.  Ford attests that he observed Plaintiff walking in front of the Beaufort Unit, and stopped him and asked him why he was on the yard.  Ford attests that Plaintiff replied "Why  the f*** you worried about it?  I am going to the commissary."  Ford attests that he asked Plaintiff for his pass, but that Plaintiff said he did not have one.  Ford attests that he then twice

---

[4] Defendants dispute the validity of these two declarations, noting that the handwriting on both appears to be the same and that Hornes' Declaration is dated after his release from Ridgeland Correctional Institute.  See Defendants' Response Memorandum, Attached Exhibit A.



ordered Plaintiff to return to his dorm, but that Plaintiff refused, stating "F*** you! I should shank you with this in my pocket." Ford attests that he frisk searched the Plaintiff, but did not find any weapons or contraband. Ford attests that after frisk searching the Plaintiff, Plaintiff again stated "I am going to shank you", following which he escorted Plaintiff to the holding cell.

Ford attests that he did not use any physical force when frisking the Plaintiff, so no use of force report was completed, but that he did fill out an Incident Report, a copy of which is attached to his affidavit as Exhibit A. Ford attests that the Defendant Hodge approved keeping Plaintiff in the holding cell until he could be seen by mental health. Ford attests that he was also involved in an incident with the Plaintiff later that day, for which Plaintiff filed a lawsuit. [See Note 3]. Ford attests that out of an abundance of caution, due to Plaintiff's nature and Ford's experience with Plaintiff involving anger issues, Plaintiff was taken to medical after each incident. Ford attests that Plaintiff was seen by Nurse Joan Godwin, who determined that he did not have any injuries from this incident and so noted on the Incident Report. See generally, Ford Affidavit, with attached Exhibit.[5] In support of Hodge's motion for summary judgment, Hodge has also submitted a copy of Ford's Affidavit and Incident Report.

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the

---

[5]The notation on the Incident Report actually reads: "Seen & treated in medical per. D. Godwin LRN/ [signature illegible]." See Defendants' Exhibit A.



pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case. Although both Defendants are subject to suit for damages under § 1983 in their individual capacities, Plaintiff has failed to present sufficient evidence to create a genuine issue of fact as to whether either named Defendant violated his constitutional rights.[6]

---

[6]In support of summary judgment, the Defendant Ford has also submitted an affidavit from Ann Hallman, SCDC Inmate Grievance Administrator, who attests that Plaintiff did not complete the SCDC Grievance Procedure by going all the way through an appeal to the Administrative Law Court. Therefore, Defendants assert that this action is also subject to dismissal because Prisoners must exhaust prison administrative remedies before filing a claim in federal court. 42 U.S.C. § 1997e(a); Hyde v. South Carolina Dep't of Mental Health, 442 S.E.2d 582, 583 (S.C. 1994)["Where an adequate administrative remedy is available to determine a question of fact, one must pursue the administrative remedy or be precluded from seeking relief in the courts."].

Under the SCDC Grievance Procedure, an inmate may file a Step 1 grievance, and if his Step 1 grievance is denied he can then file a Step 2 grievance appeal. If the inmate is dissatisfied with the decision of his Step 2, he can then appeal to the Administrative Law Court. Hallman concedes in her affidavit that Plaintiff has completed the grievance process with respect to this claim through the Step 2 level, but argues that Plaintiff did not completely exhaust his administrative remedies regarding this incident because he did not thereafter appeal to the Administrative Law Court. However, Plaintiff was not required to appeal the denial of his Step 2 grievance to the Administrative Law Court in order

5



First, there is no evidence, or even any allegations, that Defendant Hodge played any role in the incident at issue, or was even present on the scene. Hence, absent some evidence that Ford, in taking the action that he did, was carrying out some policy or custom approved by Hodge, there is no basis for liability against Hodge even assuming Ford engaged in unconstitutional conduct. Vinnedge v. Gibbs, 550 F.2d 926, 927-929 at n. 1-2 (4th Cir. 1977)[Holding that the doctrines of vicarious liability and respondeat superior are not applicable to § 1983 actions]. No such evidence is contained in the verified Complaint or other evidence. Therefore, Plaintiff has no excessive force claim against Hodge. Gomez v. Toledo, 446 U.S. 635, 640 (1980)[In order to state a cause of action under § 1983, a Plaintiff must allege, in part, that a named defendant deprived him or her of a federal right].

Further, to the extent Plaintiff complains about Hodge and/or Ford cursing at him or calling him names, it is well established that the use of vile or vulgar language is not a basis for a §

---

to exhaust his administrative remedies for purposes of this lawsuit, as conditions of confinement claims, such as is being asserted here, do not require exhaustion past the Step 2 institutional level. See Johnson v. Ozmint, 567 F.Supp. 2d 806, 820, n.5 (D.S.C. 2008); Duncan v. Langestein, No. 07-268, 2008 WL 153975 at * 5 (D.S.C. Jan. 14, 2008) (citing Charles v. Ozmint, No. 05-2187, 2006 WL 1341267 at * 4 n. 4 (D.S.C. May 15, 2006) (recognizing that completion of Step 2 grievance exhausts administrative remedies and that § 1997(a) does not require inmates to further appeal to Administrative Law Court.)); Ayre v. Currie, No. 05-3410, 2007 WL 3232177 at * 7 n.5 (D.S.C. Oct. 31, 2007). Only when a prisoner wishes to attack a conviction or sentence imposed by a prison disciplinary official must he exhaust both Steps of the prison grievance process and also appeal the Step 2 decision to the State Administrative Law Court in order to exhaust his remedies. See SCDC Inmate Grievance System Procedures Issued 1-1-2006, Numbers 13.7-13.9 (requiring the inmate to appeal the result of a disciplinary hearing to the South Carolina Administrative Law Court); Furtick v. South Carolina Dep't of Corr., 649 S.E.2d 35 (S.C. 2007); see also Dicks v. South Carolina Dep't of Corr., No. 9:06-cv-663-HFF-GCK, 2006 WL 1207851 at *3 (D.S.C. 2006). Cf. Braden v. 30th Judicial Circuit Ct., 410 U.S. 484, 490-91 (1973).
Plaintiff is not challenging a disciplinary conviction in this case. Therefore, the Defendants are not entitled to summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies.



1983 claim. Malsh v. Austin, 901 F.Supp. 757 (S.D.N.Y. 1995)["Verbal assault, standing alone, is not a . . . cognizable injury in a 1983 civil rights action"]; Sluys v. Gribetz, 842 F.Supp. 764, 765 n.1 (S.D.N.Y. 1994) affmd., Sluys v. Gribetz, 41 F.3d 1503 (2d Cir. 1994); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Batista v. Rodriguz, 702 F.2d 393, 398 (2nd Cir. 1985); Ajaj v. United States, 479 F.Supp. 2d 501, 538 n. 16 (D.S.C. 2007); Morva v. Johnson, No. 09-515, 2011 WL 34020650 at * 7 (W.D.Va. Aug. 4, 2011)[Plaintiff failed "to establish that a Defendant violated a constitutional right by harassing, threatening, or ridiculing him . . . ."]; DePada v. Taylor, No. 10-398, 2011 WL 2445859 at * 9 (W.D.Va. June 15, 2011)["[A]n institutional employee's verbal harassment of an inmate or idle threats made to an inmate, even if they cause an inmate fear, anxiety or discomfort, do not present a claim of constitutional magnitude."], adopted by, 2011 WL 3105336 (W.D.Va. July 25, 2011); Musto v. Trinity Food Service, Inc., No. 07-231, 2010 WL 3565723 at * 13 (M.D.Fla. 2010)[Although "racial epithets are repulsive and generally the weapon of the uncivilized, . . . verbal harassment does not state a claim for relief in a federal civil rights action."]. Therefore, accepting Plaintiff's claim for purposes of summary judgment that such conduct in fact occurred, it provides no basis for a claim for damages under § 1983.

With respect to Plaintiff's excessive force claim against the Defendant Ford, when reviewing a claim of constitutionally excessive force, the Court should consider 1) the need for the application of force, 2) the relationship between the need and the amount of force that was used, 3) the threat to the staff and inmates as reasonably perceived by the prison officials on the basis of the facts known to them, 4) the efforts made to temper the severity of a forceful response, and 5) the extent of the injuries suffered by the prisoner. Whitley v. Albers, 475 U.S. 312, 321 (1986); Majette v. GEO Group, Inc., No. 07-591, 2010 WL 3743364, at * 6 (E.D.Va. Sept 22, 2010); see Hudson v.



McMillian, 503 U.S. 1, 7 (1992) [the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm]. Here, the evidence (considered in the light most favorable to the Plaintiff) shows that Plaintiff and Ford were engaged in a verbal confrontation over whether Plaintiff was properly in the "yard", when (according to the Plaintiff) Officer Ford grabbed him and threw him against the wall, causing his face to hit the wall several times. While these facts (considered in the light most favorable to the Plaintiff) show that force was used against the Plaintiff, they are not sufficient to give rise to a genuine issue of fact as to whether *constitutionally* excessive force was used in this instance.

Considering the Whitley factors, during this verbal confrontation Plaintiff either reached into his pocket (Plaintiff's version) or told Ford he had a shank (Ford's version), resulting in Ford conducting a pat down search of the Plaintiff. It is unfortunately a fact of life that prisons are dangerous places housing dangerous people under often times tense and strained conditions and circumstances. Pat downs of prisoners by prison guards under such circumstances is an all too common occurrence. Further, having a prisoner engage a correctional officer in a verbal confrontation, during the course of which the prisoner reaches into his back pocket (Plaintiff's version), is sufficient to give rise to a reasonable perception on the part of the prison official of a potential threat, and the fact that some amount of force was used by Ford to take control of the situation does not by itself rise to the level of a constitutional violation. Rather, in order to avoid summary judgment, the evidence must be sufficient to create a genuine issue of fact as to whether the amount of force used was constitutionally *excessive*, and in light of the circumstances as set forth in the evidence and the minimal amount of force alleged, the undersigned does not find that a genuine issue of fact exists as to whether a *constitutionally excessive* amount of force was used in this



instance. Williams, 77 F.3d at 761 [because prison officials are entitled to use appropriate force to quell prison disturbances, and because these officials oftentimes must act under pressure without the luxury of a second chance, in order for a prisoner to prevail on an Eighth Amendment claim he must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm]; see also Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ["not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"]; cf. Bell v. Wolfish, 441 U.S. 520, 540 (1979) ["[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action"].

This finding is further bolstered by the fact that there is no evidence to show that Plaintiff received any injuries as a result of this incident. The evidence reflects that Plaintiff was seen by medical following this incident, and there is no indication on the Incident Report filed in this case that Plaintiff suffered any significant injuries, if any at all. Further, Plaintiff has also submitted no evidence whatsoever (such as medical reports or exhibits, affidavits of the treating nurse, etc.) to show that he incurred any injury as a result of this incident. See Strickler v. Waters, 989 F.2d 1375, 1380-1381 n. 9 (4th Cir. 1993) [the mere incantation of physical or mental injury is inadequate to survive a motion for summary judgment]; Silvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995)[Explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary"(internal quotation marks omitted)].

Although it is not required that Plaintiff show he suffered more than a de minimis



9

injury to maintain an excessive force claim; see Wilkins v. Gaddy, 130 S.Ct. 1175, 1179-1180 (2010)[Noting that the notion that significant injury as a threshold requirement for stating an excessive force claim was rejected in Hudson, 503 U.S. at 7]; the "absence of [a] serious injury" nevertheless remains relevant in an Eighth Amendment inquiry. Wilkins, 130 S.Ct. at 1179-1180 [holding that the extent of injury may provide some indication of the amount of force applied, and stating that "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim"], citing to Hudson, 503 U.S. at 9 (quoting Johnson, 481 F.2d at 1033); see also Ellerbe v. Roach, No. 08-3118, 2010 WL 3361703, at * 3 (E.D.N.C. Aug 24, 2010). As noted, Plaintiff has failed to produce any evidence showing a discernible injury in this case.

Therefore, while Plaintiff may conceivably have a state law claim arising from this incident, or some further administrative remedy he can pursue, the evidence before this Court is not sufficient to create a genuine issue of fact as to whether constitutionally excessive force was used under the circumstances in this case. See Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right]; DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]. Hence, Plaintiff's excessive force claim asserted as a constitutional violation should be dismissed.

**Conclusion**

Based on the foregoing, it is recommended that the Plaintiff's motion for summary



10

judgment be **denied**, the Defendants' motions for summary judgment be **granted**, and that this case be **dismissed.**

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

September 15, 2011

Charleston, South Carolina



11

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

>Larry W. Propes, Clerk
>United States District Court
>Post Office Box 835
>Charleston, South Carolina 29401

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).